**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-00549-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Simon Treselyan, | |
| Defendant. | |

Before the Court is defendant's Motion to Reopen Bail Proceedings and for Pretrial Release (doc. 56), filed May 26, 2021.

**I.     Background.**

Defendant was arrested on September 3, 2020. The government charged defendant with one count of being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) and 18 U.S.C. § 924(a)(2), and one count of possessing a firearm while being a person subject to an order of protection in violation of 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 924(a)(2). (Doc. 1)

On October 13, 2020, this Court held a detention hearing. The Court concluded that defendant presented a risk of flight, and ordered defendant detained. (Doc. 19). On October 30, 2020, defendant filed a Motion to Review Detention Order (doc. 22). On November 10, 2020, United States District Judge Dominic W. Lanza held a hearing on defendant's motion and concluded that defendant should remain detained. (Doc. 28).

//

On May 26, 2021, defendant moved to reopen detention. (Doc. 56). Defendant argued that changed circumstances warranted the reopening of detention proceedings and an order granting pretrial release. The motion was fully briefed. (Docs. 60, 65). On June 30, 2021, the Court held a hearing on defendant's Motion to Reopen.[1]

## II.     Principles of Law.

The Bail Reform Act mandates the release of a person pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). The Court must first consider whether there is "a serious risk that [the defendant] will flee" if released from custody. *United States v. Menaged*, No. CR-17-0680-PHX-GMS, 2017 WL 2556828 *2 (D. Ariz. June 13, 2017), citing 18 U.S.C. § 253(f)(2)(A). The Court must then consider four factors when determining whether pretrial detention is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008), citing 18 U.S.C. § 3142(g).

> The Bail Reform Act provides that a detention hearing:
>
> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2). Information has a "material bearing on the issue" when "it increases the chances the defendant appears for his criminal hearing or decreases the danger the defendant poses to an individual or the community as a whole." *United States*

---

[1] There are three transcripts relevant to this motion; the transcript of defendant's initial detention hearing (doc. 27), the transcript of defendant's hearing before District Judge Lanza reviewing the Court's Detention Order (doc. 40), and the transcript of the Court's June 30, 2021 hearing considering the Motion to Reopen (doc. 76).

*v. Martin*, No. 13-CR-00466-JSW-2 (KAW), 2015 WL 3464937 at *2 (N.D. Cal. May 29, 2015). The new information presented by the movant party must establish "that information now exists that was not known to the movant at the initial detention hearing." *United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020). If the information was available at the initial detention hearing, the issue of detention should not be reopened. *United States v. Ward*, 63 F. Supp. 2d 1203, 1206 (C.D. Cal. 1999). If the Court determines that detention should be reopened, the Court re-examines the four Section 3142(g) factors, considering the new information offered by the moving party in context.

### III.   Analysis.

#### A.   Changed Circumstances.

Defendant has demonstrated that changed circumstances warrant reopening the issue of detention. Between the initial detention hearing and the Motion to Reopen, defendant obtained a $289,256.29 insurance settlement related to the destruction of defendant's California home during the 2018 Woolsey wildfire. (Doc. 56 at 7). The government agrees with defendant that defendant's insurance settlement is new information. (Doc. 60 at 4). That basis alone is sufficient to justify reopening the detention hearing, as the court previously noted that defendant had not pledged any of his own personal resources in support of his argument that a bond would assure his appearance at future proceedings. (Doc. 40, Tr. 24:23-25:7).

Additionally, defendant's changed immigration status also constitutes a changed circumstance. On October 13, 2020, in detaining defendant as a flight risk, the Court noted that defendant was not a citizen of the United States, (doc. 19 at 2); in reviewing that Order of Detention, Judge Lanza also noted that defendant "no longer has lawful status here." (Doc. 40, Tr. 22). As part of defendant's Motion to Reopen Bail Proceedings, defendant noted that on April 14, 2021, United States Citizenship and Immigration Services extended defendant's green card retroactively. (Doc. 65 at 5, citing doc. 65-1, Ex. A). Defendant further noted that under *In re Stowers*, 22 I&N Dec. 605

(BIA 1999), defendant's lawful residency status does not end until a final order is entered ordering his removal from the United States. *Id.* at 612 n.10. Therefore, defendant has retroactively maintained lawful residency status in the United States throughout these proceedings, information that necessarily was not available to defendant in October 2020, when this Court ordered defendant detained.

Notwithstanding its concession that the insurance settlement is new information, the government argues that it is not new information that defendant's friends will co-sign a bond, because defendant previously argued at that "his friends would post a bond on his behalf. (Doc. 60 at 4, citing Doc. 40, Tr. 18:22).

Defendant's situation in this case is analogous to the situation in *Ward,* where the moving party sought to reopen detention on the basis that the movant's immediate family was willing to post "upwards of one million dollars of real property" to secure the movant's release. *Ward*, 63 F. Supp. 2d at 1207. The court reopened the detention hearing, finding that "the full extent of [movant's] potential sureties was not fully known and available to him" at the time of the initial bail hearing. *Id*.

In this case, defendant was not aware of the full extent of financial resources available to him at the time of the initial hearing, and at this time is not unlawfully present in the United States. The Court therefore reopens the issue of detention and considers both whether defendant remains a flight risk and whether the Section 3142(g) factors still counsel in favor of detention.

**B.     Flight Risk.**

The Court concludes that there is a package of release conditions that mitigate against the risk of flight. Defendant represents that he is willing to post a personal recognizance bond of $250,000, with $75,000 in cash security. (Docs. 56 at 3, 74 at 1-2). The bond includes more than $1,000,000 in assets owned by friends of the defendant, including personal family residences. (*See*, e.g. doc. 76, Tr. 13:7-13). Defendant has also agreed to surrender his passport, refrain from obtaining new travel documents, and waive

any extradition rights he may have as a citizen of the United Kingdom.[2] (Doc. 56 at 4). Finally, defendant agrees to home detention at the house of one of his suretors, agrees not to travel anywhere other than the Southern District of California and the District of Arizona, and agrees to electronic monitoring and supervision by Pretrial Services. (*Id*). The Court concludes the combination of proposed conditions would reasonably assure defendant's presence at future hearings. *See* 18 U.S.C. § 3142(c).

The government asserts that defendant remains a flight risk because he does not have strong ties to the United States or to the District of Arizona. (Doc. 60 at 6-7). However, the Court previously noted that defendant's decision to retain immigration counsel cut against the finding of a flight risk. (Doc. 40, Tr. 25:23-26:4). That immigration counsel's efforts were apparently successful in retroactively restoring defendant's status as lawfully in the United States (doc. 65-1, Ex. A; doc. 76, Tr. 6:21-7:24) provides additional evidence that defendant intends to remain in the United States.

As to the issue of local ties, caselaw supports a broader reading of the notion of "ties to the community" than merely geographical ties. *See United States v. Townsend*, 897 F.2d 989, 995-96 (9th Cir. 1990) ("When assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens.") Defendant has lived in the United States for several years (doc. 76, Tr. 22:19-23) and worked in the United States continuously up until his arrest (*id*, Tr. 31:3-32:4).

---

[2] It is unlikely that an extradition court in the United Kingdom would consider itself bound by representations made to a United States court. However, Article 17 of the extradition treaty between the United States and the United Kingdom does permit a person to waive extradition. *See* Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., art. 17, Mar. 31, 2003, S. Treaty Doc. 108–23.

Although defendant's promise to waive extradition is of little moral suasion, it is not entirely meaningless. Defendant may still be required to explain to a court in the United Kingdom why he swore an affidavit disclaiming an intent to fight extradition in the event defendant reneged on his pledge to this Court not to fight extradition.

Additionally, although not familial ties, defendant has demonstrated ties to individuals that are stronger than the ties that might be expected of ordinary business associates. (*Id.*, Tr. 32:5-22). While defendant's only familial connections reside in the United Kingdom[3] and Australia, the Court concludes that defendant's personal and professional connections to the United States are sufficient to mitigate the risk of flight when coupled with the additional conditions of release proposed by defendant in the Motion to Reopen.

### C.     Bail Reform Act Factors.

The Court reviews the four factors mandated by the Bail Reform Act to determine if defendant should be released.

(1)     Nature and Circumstances of Offense.

Defendant is charged with being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) and 18 U.S.C. § 924(a)(2), and possessing a firearm while being a person subject to an order of protection in violation of 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 924(a)(2). The Court previously concluded that defendant likely faced approximately 27 to 33 months in prison under the Sentencing Guidelines range. (Doc. 40, Tr. 23:10-12). At oral argument on the motion to reopen, defendant contended a more accurate guidelines range calculation is approximately 6 to 12 months (doc. 76, Tr. 18:2-5). Although the government disputes that figure (doc. 76, Tr. 23:16-18), considering the additional resources defendant is willing to personally commit in order to obtain release, the Court concludes the potential exposure defendant faces if convicted is outweighed by the proposed bail package for purposes of detention.

(2)     Weight of the Evidence.

At the initial detention hearing, the Court concluded that the weight of the evidence was "the least important factor," but that this case will be "heavily contested as to several elements" of the charged offense. (Doc. 27, Tr. 13:17-18). At the June 30, 2021 hearing on the motion to reopen, the parties disagreed on whether the nature of the prior

---

[3] At the June 30, 2021 hearing, defendant maintained that his only familial connection in the United Kingdom recently passed away. (Doc. 76. Tr. 30:6-9).

1 California proceedings places defendant's alleged conduct within the ambit of 18 U.S.C.
2 § 922(g)(8) (doc. 76, Tr. 15:24-17:13) and Section 922(g)(5) (doc. 76, Tr. 15:14-23).
3 Nothing discussed during the hearing warrants revisiting the Court's previous conclusion
4 that this case will be heavily contested as to several elements of the charged offense, and
5 that the weight of the evidence is the least important factor when considering whether
6 detention is warranted.

(3)     Personal History.

Defendant's personal history supports release. The Court considered defendant's lack of status in the United States as an important factor in determining that defendant must be detained. (Doc. 27, Tr. 13:19-20; doc. 40, Tr. 22:4-5). However, as explained in Section III(A), defendant recently received retroactive lawful residency status. As a matter of law, defendant has not been without legal status at any point during these proceedings.

(4)     Potential Danger to the Community.

The Court in the initial detention hearing concluded that the record did not support a finding that defendant was a danger to the community. (Doc. 27, Tr. 13:23-24). Neither party has submitted information that compels a different conclusion now.

**IV.     Conclusion.**

The Court concludes that defendant has demonstrated changed circumstances sufficient to justify reopening the bail proceedings and concludes that the proposed terms and conditions of defendant's bail package are reasonable to ensure defendant's appearance. However, the Court will stay this Order for a period of fourteen (14) days, pursuant to Rule 59(a) of the Federal Rules of Criminal Procedure, to permit the government to seek review under 18 U.S.C. § 3145(a)(1). *See, e.g. United States v. Tooze*, 236 F.R.D. 442, 443-44 (D. Ariz. 2006).[4]

//

//

---

[4] Although *Tooze* refers to a ten-day period to file an objection, Rule 59(a) was amended in 2009 to extend the time period from ten to fourteen days.

**IT IS ORDERED:**

(1) Defendant's Motion to Reopen Bail Proceedings and for Pretrial Release (doc. 56) is **granted**.

(2) Defendant shall observe the following conditions for which his release is subject:

(A) Defendant shall post a secured bond of $250,000, secured by $75,000 in cash that defendant will deposit with the Clerk of Court, with the remainder secured by real property of defendant's suretors as contemplated by the Motion. Defendant and his suretors shall complete Forms AO-98, AO-100A, and AO-100B and file the completed forms with the Clerk of Court;

(B) Defendant shall remain in home detention at the home of suretor Kristi Ruiz in Santa Barbara, California. Defendant shall provide Pretrial Services, in writing, the address and telephone number of the residence where defendant is residing;

(C) Defendant shall be subject to electronic monitoring as directed by Pretrial Services;

(D) Defendant shall not travel outside of the Southern District of California, Central District of California,[5] or the District of Arizona except where necessary for travel to and from these proceedings;

(E) Defendant shall surrender his United Kingdom passport to Pretrial Services within **three (3) days** of the effective date of this Order, and shall not obtain new travel documents during the pendency of these proceedings;

(F) Defendant shall file with the Court a sworn affidavit disclaiming any intent to invoke extradition rights with regard to the indictment in this case and agreeing to be returned to the United States immediately in the event defendant is found to have fled the country following his pretrial release. This affidavit shall be filed within **fourteen (14) days** of the effective date of this Order;

---

[5] Although the Motion to Reopen references the Southern District of California, Santa Barbera, where defendant will remain in home detention with one of his suretors, is in the Central District of California.

- 8 -

    (G) Defendant shall be subject to appropriate supervision by Pretrial Services, as directed;

    (H) Defendant shall not commit any federal, state, or local crime;

    (I) Defendant shall avoid all direct or indirect contact with persons who are considered alleged victims or potential witnesses;

    (J) Defendant shall maintain weekly contact with his attorney by Friday, noon Arizona Time of each week;

  (3) The Court **stays** imposition of this Order for a period of **fourteen (14) days** to permit the government to seek review under 18 U.S.C. § 3145(a)(1).

  Dated this 20th day of July, 2021.

*[signature: Michael T. Morrissey]*
Honorable Michael T. Morrissey
United States Magistrate Judge